J-S02043-19

2019 PA Super 151

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RASHEED ADAMS-SMITH | : | |
| | : | |
| Appellant | : | No. 4080 EDA 2017 |

Appeal from the PCRA Order November 20, 2017
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0003263-2013

BEFORE: GANTMAN, P.J.E., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

OPINION BY GANTMAN, P.J.E.: **FILED MAY 07, 2019**

Appellant, Rasheed Adams-Smith, appeals from the order entered in the Montgomery County Court of Common Pleas, which denied his first petition brought pursuant to the Post-Conviction Relief Act ("PCRA"), at 42 Pa.C.S.A. §§ 9541-9546. We affirm in part, vacate in part, and remand with instructions.

The trial court and this Court set forth the relevant facts and previous procedural history of this case as follows.

> On April [4], 2014, following trial before the [trial court] and a jury, [Appellant]–then represented by William E. Moore, Esquire–was convicted of rape of a child under the age of thirteen, involuntary deviate sexual intercourse [("IDSI")] with a child under the age of thirteen, indecent assault of a child under the age of thirteen, and indecent exposure.
>
> At trial, the Commonwealth presented evidence that [Appellant]–a close friend of the victim's family–began improperly touching the victim (A.G.) at a time when A.G. was approximately five (5) years old and [Appellant] was a

teenager.[5] This improper contact continued over a period of years, beginning with repeated touching by [Appellant] of A.G.'s bare buttocks and ultimately escalating to, *inter alia*, [Appellant] exposing himself and masturbating to ejaculation in front of A.G. and repeatedly penetrating A.G.'s anus with [Appellant's] penis. A.G. testified that these anal penetrations occurred "too many times to count."

[5] At the time of trial, A.G. was ten (10) years old and [Appellant] was twenty (20).

[Appellant] was charged with and convicted of crimes he committed after his eighteenth birthday, specifically the period between July 2011 and September 2012. Evidence of [Appellant's] earlier improper conduct with [Victim] was admitted—upon the Commonwealth's motion—solely to provide the jurors with the complete background and history of the case.

On August 1, 2014, [Appellant] appeared before the [trial court] for a hearing to determine whether [Appellant] would be classified as a sexually violent predator [("SVP")]. Following hearing, the [trial court] accepted the recommendation of the Pennsylvania Sexual Offenders Assessment Board and determined that [Appellant] was, in fact, [an SVP].

The case then proceeded immediately to sentencing. Following hearing, the [trial court] imposed a standard range sentence of not less than ten (10) nor more than twenty (20) years['] imprisonment on [Appellant's] conviction for rape of a child. The [trial court] imposed a consecutive standard range sentence of not less than ten (10) and not more than twenty (20) years['] imprisonment on [Appellant's] conviction for [IDSI] with a child. The [trial court] further imposed a concurrent sentence of not less than one (1) nor more than two (2) years['] imprisonment on [Appellant's] conviction for indecent assault, and a sentence of two (2) years['] probation on his conviction for indecent exposure.

[Appellant] thus received an aggregate sentence of not less than twenty (20) nor more than forty (40) years[']

imprisonment, with the [trial court] explaining the reasons for the sentences imposed at some length on the record.

***Commonwealth v. Adams-Smith***, No. 85 EDA 2015, 2015 WL 7571762, unpublished memorandum at 2-3 (Pa.Super. filed November 24, 2015) (quoting Trial Court Opinion, filed March 12, 2015, at 1-2) (internal citations to record and some footnotes omitted).  Additionally at sentencing, the court notified Appellant of his requirement to register and report for life as a Tier III sexual offender and SVP under the Sexual Offender Registration and Notification Act ("SORNA").  Appellant timely filed a notice of appeal on January 5, 2015.  This Court affirmed the judgment of sentence on November 24, 2015.  ***See id.***  Appellant did not file a petition for allowance of appeal with our Supreme Court, so the judgment of sentence became final on or about December 24, 2015.

Appellant timely filed *pro se* his first PCRA petition on November 18, 2016.

> [The PCRA] court granted [Appellant's] request for court-appointed PCRA counsel by order dated May 1, 2017, and filed of record on May 2, 2017, after an evidentiary hearing regarding [Appellant's] indigency.  Court-appointed PCRA counsel filed a "Petition for Permission to Withdraw as Counsel" on July 7, 2017, to which he attached a "no-merit" letter [pursuant to ***Commonwealth v. Turner***, 518 Pa. 491, 544 A.2d 927 (1988) and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa.Super. 1988) (*en banc*)] dated July 5, 2017.  [Appellant] responded by filing a *pro se* document entitled "Petitioner's Response to ***Finley*** Letter" on July 20, 2017.
>
> On October 23, 2017, [the PCRA] court filed of record its "Notice of Intention to Dismiss," which also granted court-

appointed counsel's request for permission to withdraw. That notice was based upon [Appellant's] *pro se* PCRA petition, court-appointed PCRA counsel's "no-merit" letter, [Appellant's] *pro se* response thereto, and [the PCRA] court's independent review of the record and legal research. On November 13, 2017, [Appellant] acting *pro se* filed "Petitioner's Response to Notice of Intent to Dismiss." Review and consideration of [Appellant's] response failed to persuade [the PCRA] court that [Appellant] was entitled to a hearing on his PCRA petition or entitled to any form of PCRA relief. Accordingly, [the PCRA] court by order entered November 22, 2017, dismissed [Appellant's] "Petition for Post-Conviction Relief (PCRA)" filed November 18, 2016, without [a] hearing.

[Appellant] filed a notice of appeal on December 18, 2017. [The PCRA] court directed [Appellant] to file a concise statement of errors complained of on appeal by order dated and entered [December 21, 2017]. [Appellant] complied by filing his concise statement on January 5, 2018.

(PCRA Court Opinion, filed February 21, 2018, at 2).

Appellant raises the following issues for our review:

1. WHETHER THE PCRA COURT ERRED AS A MATTER OF LAW, WHEN IT DISMISSED THE PCRA PETITION WITHOUT A HEARING[?]

2. WHETHER APPELLANT IS ENTITLED TO A NEW TRIAL OR DISMISSAL OF THE CHARGES WHERE TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO PRESENT ANY COUNTER ARGUMENTS PRIOR TO OR DURING, OR FAILING TO OBJECT TO THE COMMONWEALTH'S INTRODUCTION AT TRIAL OF PRIOR BAD ACTS[?]

3. WHETHER APPELLANT IS ENTITLED TO A NEW TRIAL OR DISMISSAL OF THE CHARGES WHERE TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO PURSUE [A] PRETRIAL INTERVIEW TO EXPLORE TAINT OF MINOR VICTIM IN ACCORDANCE WITH 42 PA.C.S.A. § 5985.1 & PA.R.E. 601[?]

4. WHETHER APPELLANT IS ENTITLED TO A NEW TRIAL OR

J-S02043-19

DISMISSAL OF CHARGES WHERE, TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO CONDUCT A PROPER CROSS-EXAMINATION OF COMMONWEALTH WITNESS DR. SCRIBANO & MOVE TO STRIKE HIS TESTIMONY AS NON-RELEVANT PURSUANT TO [PENNSYLVANIA RULES OF EVIDENCE?]

5. APPELLANT IS ENTITLED TO A NEW TRIAL OR DISMISSAL OF THE CHARGES DUE TO THE CUMULATIVE NATURE OF THE ERRORS IN THIS CASE[?]

(Appellant's Brief at 2).

Preliminarily, we observe that appellate briefs must conform in all material respects to the briefing requirements set forth in the Pennsylvania Rules of Appellate Procedure. Pa.R.A.P. 2101. **See also** Pa.R.A.P. 2114-2119 (addressing specific requirements of each subsection of brief on appeal). Regarding the argument section of an appellate brief, Rule 2119(a) provides:

**Rule 2119. Argument**

**(a) General rule.**—The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a). "[I]t is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities." **Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa.Super. 2007), *appeal denied,* 596 Pa. 703, 940 A.2d 362 (2008) (internal citations omitted). "This Court will not act as counsel and will not develop arguments

- 5 -

on behalf of an appellant." **Id.** If a deficient brief hinders this Court's ability to address any issue on review, we shall consider the issue waived. **Commonwealth v. Gould**, 912 A.2d 869, 873 (Pa.Super. 2006) (holding appellant waived issue on appeal where he failed to support claim with relevant citations to case law and record). **See also In re R.D.**, 44 A.3d 657 (Pa.Super. 2012), *appeal denied*, 618 Pa. 677, 56 A.3d 398 (2012) (holding appellant waived issue, where argument portion of appellant's brief lacked meaningful discussion of, or citation to, relevant legal authority regarding issue generally or specifically; appellant's lack of analysis precluded meaningful appellate review).

Instantly, Appellant did not properly develop his argument section for his fourth appellate issue, concerning the Commonwealth's expert witness, Dr. Scribano. Appellant notes several reasons why he thinks Dr. Scribano was an unreliable witness, but Appellant does not discuss how this relates to ineffective assistance of counsel or cite to relevant law. **See** Pa.R.A.P. 2119(a). We decline to make Appellant's argument for him. **See Hardy, supra**. Accordingly, Appellant waived his fourth appellate issue regarding Dr. Scribano's testimony. **See In re R.D., supra**; **Gould, supra**.

In his remaining issues combined, Appellant announces the PCRA court improperly relied on counsel's **Turner/Finley** no-merit letter when the court dismissed his PCRA petition without an evidentiary hearing. Appellant contends trial counsel was ineffective for failing to object at trial to evidence

of prior bad acts, specifically related to Appellant's acts of abuse of Victim, which occurred before Appellant's eighteenth birthday. Appellant further contends appellate counsel was ineffective for not preserving the prior-bad-acts claim on direct appeal.

Appellant also avers trial counsel was ineffective because counsel did not request a competency hearing regarding Victim, where Victim's testimony may have been tainted during an interview with a social worker. Appellant claims the many instances of ineffective assistance of counsel amount to cumulative error. Appellant concludes this Court should dismiss his convictions or order a new trial. We disagree.

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. *Commonwealth v. Conway*, 14 A.3d 101, 109 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513, 515 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We give no such deference, however, to the court's legal conclusions. *Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa.Super. 2012). Further, a petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to PCRA relief, and

no purpose would be served by any further proceedings. ***Commonwealth v. Wah***, 42 A.3d 335, 338 (Pa.Super. 2012); Pa.R.Crim.P. 907.

The law presumes counsel has rendered effective assistance. ***Commonwealth v. Williams***, 597 Pa. 109, 950 A.2d 294 (2008). Under the traditional analysis, to prevail on a claim of ineffective assistance of counsel, a petitioner bears the burden to prove his claims by a preponderance of the evidence. ***Commonwealth v. Turetsky***, 925 A.2d 876 (Pa.Super. 2007), *appeal denied*, 596 Pa. 707, 940 A.2d 365 (2007). The petitioner must demonstrate: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for the asserted action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. ***Id. See also Commonwealth v. Kimball***, 555 Pa. 299, 724 A.2d 326 (1999). "A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." ***Commonwealth v. Spotz***, 624 Pa. 4, 34, 84 A.3d 294, 312 (2014) (quoting ***Commonwealth v. Ali***, 608 Pa. 71, 86-87, 10 A.3d 282, 291 (2010)). "Where it is clear that a petitioner has failed to meet any of the three, distinct prongs of the…test, the claim may be disposed of on that basis alone, without a determination of whether the other two prongs have been met." ***Commonwealth v. Steele***, 599 Pa. 341, 360, 961 A.2d 786, 797 (2008).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit…." **Commonwealth v. Pierce**, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." **Commonwealth v. Poplawski**, 852 A.2d 323, 327 (Pa.Super. 2004).

> Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective.

**Pierce, supra** at 524, 645 A.2d at 194-95 (internal citations omitted).

> Prejudice is established when [a defendant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In [**Kimball, supra**]*,* we held that a "criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

**Commonwealth v. Chambers**, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002) (some internal citations and quotation marks omitted).

"Where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." **Commonwealth v. Sneed**, 616 Pa. 1, 19, 45 A.3d 1096, 1107 (2012).

> A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. A claim of ineffectiveness generally cannot succeed through comparing, in hindsight, the trial strategy employed with alternatives not pursued.

*Id.* at 19-20, 45 A.3d at 1107 (internal citations and quotation marks omitted). Numerous claims of ineffective assistance of counsel will not cumulatively warrant relief if the claims fail individually. ***Commonwealth v. Koehler***, 614 Pa. 159, 36 A.3d 121 (2012). ***See also Commonwealth v. Washington***, 592 Pa. 698, 927 A.2d 586 (2007) (stating claim of cumulative error fails if individual claims do not warrant relief).

Generally, character evidence is not admissible to prove conduct. Pa.R.E. 404(b).

> **Rule 404. Character evidence not admissible to prove conduct; exceptions; other crimes**
>
> \* \* \*
>
> **(b) Other crimes, wrongs, or acts.**
>
> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.
>
> (2) Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.
>
> (3) Evidence of other crimes, wrongs, or acts proffered under subsection (b)(2) of this rule may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice.

Pa.R.E. 404(b)(1)-(b)(3).  There are limited exceptions to the admission at trial of evidence of other crimes or prior bad acts.  ***Id.***; ***Commonwealth v. Young***, 989 A.2d 920, 924 (Pa.Super. 2010).

> One such exception arises in the prosecution of sexual offenses.  Evidence of prior sexual relations between defendant and his…victim is admissible to show a passion or propensity for illicit sexual relations with the victim.  This exception is limited, however.  The evidence is admissible only when the prior act involves the same victim and the two acts are sufficiently connected to suggest a **continuing course of conduct.**  The admissibility of the evidence is not affected by the fact that the prior incidents occurred outside of the statute of limitations.

***Id.*** (emphasis in original).  Evidence that provides the factfinder with the *res gestae*, or complete history, of a crime holds special significance.  ***Commonwealth v. Wattley***, 880 A.2d 682, 687 (Pa.Super. 2005), *appeal dismissed*, 592 Pa. 304, 924 A.2d 1203 (2007).

> [T]he trial court is not…required to sanitize the trial to eliminate all unpleasant facts from…consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged.
>
> *Res gestae* evidence is of particular import and significance in trials involving sexual assault.  By their very nature, sexual assault cases have a pronounced dearth of independent eyewitnesses, and there is rarely any accompanying physical evidence….  [In these] cases the credibility of the complaining witness is **always** an issue.

***Id.*** (emphasis in original) (internal citations and quotation marks omitted).

"The general rule in Pennsylvania is that every person is presumed

- 11 -

competent to be a witness." ***Commonwealth v. Delbridge***, 578 Pa. 641,

663, 855 A.2d 27, 39 (2003). "A decision on the necessity of a competency

hearing is addressed to the discretion of the trial court." ***Id.***

> A competency hearing concerns itself with the minimal capacity of the witness to communicate, to observe an event and accurately recall that observation, and to understand the necessity to speak the truth. A competency hearing is **not** concerned with credibility. Credibility involves an assessment of whether…what the witness says is true; this is a question for the fact finder. An allegation that the [child witness'] memory of the event has been tainted raises a red flag regarding competency, not credibility. Where it can be demonstrated that a [witness'] memory has been affected so that their recall of events may not be dependable, Pennsylvania law charges the trial court with the responsibility to investigate the legitimacy of such an allegation.

***Id.*** at 663, 855 A.2d at 40 (emphasis added). Furthermore,

> In order to trigger an investigation of competency on the issue of taint, the moving party must show some evidence of taint. Once some evidence of taint is presented, the competency hearing must be expanded to explore this specific question. During the hearing the party alleging taint bears the burden of production of evidence of taint and the burden of persuasion to show taint by clear and convincing evidence. Pennsylvania has always maintained that since competency is the presumption, the moving party must carry the burden of overcoming that presumption.

***Id.*** at 664, 855 A.2d at 40.

Instantly, Appellant sexually abused Victim for approximately four

years, beginning when Appellant was fifteen years old. Based on this activity,

the Commonwealth charged Appellant with numerous sexual offenses, which

occurred from July 2011 to September 2012, after Appellant's eighteenth

birthday. Before trial, the Commonwealth filed a motion *in limine* to introduce evidence of Appellant's acts of abuse of Victim, which had occurred before Appellant's eighteenth birthday. The court granted the motion *in limine* for the limited purpose of providing the jury with a complete history of the case. After the jury convicted Appellant of various sex offenses, the court held a hearing and imposed SVP status on Appellant. Appellant received an aggregate term of 20 to 40 years' imprisonment plus 2 years' probation along with notice of his SVP status and SORNA registration and reporting requirements for life as a Tier III sexual offender.

Here, the court granted in part the Commonwealth's pretrial motion *in limine* and later admitted evidence at trial of Appellant's prior sexual acts against Victim. The court allowed this evidence for the limited purpose of providing the jury with the *res gestae* or complete history of the case as well as Appellant's course of conduct. **See Wattley, supra**. The evidence was necessary for the jury to appreciate Appellant's lengthy period of steady grooming and escalation of sexual conduct toward Victim and to furnish context for the charges actually pending against Appellant. Any opposition of defense counsel would have not merited relief. Therefore, neither trial counsel nor appellate counsel had reason to pursue this claim. **See Poplawski, supra**.

With respect to claims of taint regarding Victim's testimony, Appellant's bland assertions, absent specifics, are no more than mere conjecture and

constitute waiver on appeal. Appellant's brief fails to support his claims with pertinent discussion, references to the record, and citations to relevant legal authorities. *See Hardy, supra*. Based upon the foregoing, Appellant's claims of ineffective assistance of counsel fail individually. Therefore, he cannot succeed on a claim of cumulative error. *See Koehler, supra*. As Appellant was not entitled to relief, based on the issues raised in his PCRA petition, the court properly issued Rule 907 notice and denied PCRA relief without a hearing. *See Wah, supra*. Accordingly, we affirm the PCRA court's decision to deny relief on Appellant's ineffective assistance of counsel claims. *See Conway, supra*.

Nevertheless, we are mindful of recent case law calling into question the retroactive application of sex offender registration under SORNA to offenses committed before the effective date of SORNA. Given the timeliness of Appellant's PCRA petition, we elect to review the legality of Appellant's sentence on this basis *sua sponte*. *See Commonwealth v. DiMatteo*, ___ Pa. ___, 177 A.3d 182 (2018) (reiterating general rule that legality of sentence can be reviewed in context of timely PCRA petition); *Commonwealth v. Randal*, 837 A.2d 1211 (Pa.Super. 2003) (*en banc*) (explaining challenges to illegal sentence cannot be waived and may be raised by this Court *sua sponte*, assuming jurisdiction is proper; illegal sentence must be vacated).

The Pennsylvania Supreme Court held that the registration

requirements under SORNA constitute criminal punishment. *Commonwealth v. Muniz*, 640 Pa. 699, 164 A.3d 1189 (2017), *cert. denied*, ___ U.S. ___, 138 S.Ct. 925, 200 L.Ed.2d 213 (2018). The *Muniz* Court declared SORNA's purpose was punitive in effect, notwithstanding the General Assembly's intended purpose for the law as a civil remedy. *Id.* at 748-49, 164 A.3d at 1218.

A criminal statute is *ex post facto* if it applies to events which occurred before the law was effective and the law disadvantages the offender. *Id.* at 710, 164 A.3d 1196. *Muniz* declared SORNA unconstitutional to the extent it violates the *ex post facto* clauses of both the United States and Pennsylvania Constitutions. *Id.* at 749, 164 A.3d at 1219. SORNA additionally violates the *ex post facto* clause of the Pennsylvania Constitution because it places a unique burden on the right to reputation and undermines the finality of sentences by demanding more severe registration requirements. *Id.* at 756-57, 164 A.2d at 1223. This Court has since held *Muniz* created a substantive rule that retroactively applies in the collateral context. *Commonwealth v. Rivera-Figueroa*, 174 A.3d 674, 678 (Pa.Super. 2017).

Instantly, Appellant committed his offenses between July 2011 and September 2012, before the effective date of SORNA (December 20, 2012). *See* 42 Pa.C.S.A. §§ 9799.10, 9799.41. Megan's Law III applied at that time and required lifetime registration as a sex offender for Appellant's sex offenses. *See* 42 Pa.C.S.A. § 9795.1(b)(2) (expired December 19, 2012).

Under SORNA, Appellant's sex offenses also carry a lifetime registration requirement but with increased reporting requirements. *See* 42 Pa.C.S.A. §§ 9799.14(d)(2), (4), (8); 9799.15(a)(3), (6). Because Appellant committed his offenses before the effective date of SORNA, the increased reporting requirements of SORNA constitute greater punishment for Appellant. *See Muniz, supra*. Thus, the imposition of SORNA registration requirements on Appellant violates the *ex post facto* clauses of both the United States and Pennsylvania Constitutions.[1] *See id.*; *Rivera-Figueroa, supra*.

The *Muniz* decision that the registration requirements under SORNA constituted criminal punishment led to a related issue concerning the validity of the process and imposition of SVP status on a defendant. *See Commonwealth v. Butler*, 173 A.3d 1212, 1217 (Pa.Super. 2017), *appeal granted*, ___ Pa. ___, 190 A.3d 581 (2018). In *Butler*, this Court examined the SVP process and held: "[U]nder *Apprendi* and *Alleyne*,[2] a factual

---

[1] Further, the General Assembly created Subchapter I through Act 10 and amended in Act 29, in response to *Muniz* and its progeny. *See* H.B. 1952, 202 Gen. Assem., Reg. Sess. (Pa. 2018), Act 29 of 2018; H.B. 631, 202 Gen. Assem., Reg. Sess. (Pa. 2018), Act 10 of 2018. Subchapter I addresses sex offenders who committed an offense **before** December 20, 2012. *See* 42 Pa.C.S.A. §§ 9799.51-9799.75. Additionally, this Court recently held the **effective** date of SORNA controls for purposes of this *ex post facto* analysis. *See Commonwealth v. Wood*, ___ A.3d ___, 2019 PA Super 117 (filed April 15, 2019) (*en banc*); *Commonwealth v. Lippincott*, ___ A.3d ___, 2019 PA Super 118 (filed April 15, 2019) (*en banc*).

[2] *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013).

finding, such as whether a defendant has a mental abnormality or personality disorder that makes him…likely to engage in predatory sexually violent offenses, that increases the length of registration must be found beyond a reasonable doubt by the chosen fact-finder." *Id.* at 1217 (addressing SVP status *sua sponte* as illegal sentence). The *Butler* Court further held: "Section 9799.24(e)(3) of SORNA violates the federal and state constitutions because it increases the criminal penalty to which a defendant is exposed without the chosen fact-finder making the necessary factual findings beyond a reasonable doubt." *Id.* at 1218. *See* 42 Pa.C.S.A. § 9799.24(e)(3) (stating: "At the hearing prior to sentencing, the court shall determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a sexually violent predator"). The *Butler* Court concluded that trial courts can no longer designate convicted defendants as SVPs or hold SVP hearings, "until [the] General Assembly enacts a constitutional designation mechanism." *Id.* (vacating appellant's SVP status and remanding to trial court for sole purpose of issuing appropriate notice under 42 Pa.C.S.A. § 9799.23, governing reporting requirements for sex offenders, as to appellant's registration obligation). In reaching its decision, the *Butler* Court simply applied *Alleyne* and *Apprendi* to the SVP process, in light of *Muniz*.

Here, Appellant's judgment of sentence became final on December 24, 2015, after the United States Supreme Court had decided *Alleyne* on June 17, 2013. *See* Pa.R.A.P. 903(a); *Alleyne, supra*. Applying *Alleyne* in a new

context, this Court decided **Butler** on October 31, 2017, to deem unconstitutional the current mechanism for imposition of SVP status used in the present case. **See Butler, supra**. **See also Chaidez v. United States**, 568 U.S. 342, 133 S.Ct. 1103, 185 L.Ed.2d 149 (2013) (stating case does not announce new constitutional rule that requires **Teague**[3] retroactivity analysis when case takes principle that governed prior decisions and applies it to new facts). Both **Muniz** and **Butler** were decided during the pendency of Appellant's timely PCRA petition. Under these new cases, Appellant's SVP status constitutes an illegal sentence subject to correction. **See** 42 Pa.C.S.A. § 9542 (stating persons serving illegal sentence may obtain collateral relief); **DiMatteo, supra** (noting unconstitutionality of Section 7508 in light of **Alleyne** and allowing **Alleyne** relief in PCRA context, so long as judgment of sentence was not final **before Alleyne was decided**) (citing **Commonwealth v. Ruiz**, 131 A.3d 54 (Pa.Super. 2015) (applying **Alleyne** to correct illegal sentence in context of timely-filed PCRA petition)).

To quiet any conflict in the law, we now hold a PCRA petitioner can obtain relief from an illegal sentence under **Butler**, if the petition is timely filed, as long as the relevant judgment of sentence became final **after** June 17, 2013, the date **Alleyne** was decided. Because **Butler** simply applied **Alleyne** principles to the SVP process, **Butler** did not announce a new

---

[3] **Teague v. Lane**, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

constitutional rule that required a *Teague* retroactivity analysis. *See Chaidez, supra*. Therefore, the date of the *Alleyne* decision, not the date of the *Butler* decision, controls for purposes of obtaining PCRA relief from the imposition of SVP status.

Additionally, we hold Appellant is entitled to PCRA relief under *Muniz* and *Rivera-Figueroa*, due to the *ex post facto* imposition of SORNA registration requirements which rendered the sentence illegal. Nevertheless, Appellant is not entitled to any relief on the ineffective assistance of counsel issues he raised in his timely PCRA petition and on appeal. Accordingly, we affirm in part but vacate (1) the judgment of sentence, to the extent it requires registration and reporting requirements **under SORNA**, and (2) Appellant's SVP status; and we remand the case to the trial court to instruct Appellant on his proper registration and reporting requirements.

Order affirmed in part; SORNA requirements and SVP status vacated; case remanded with instructions. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/7/19

- 19 -